**AUTOMOTIVE TIRE SERVICE, INC.**

v.

**George H. GREEN, as Trustee of Commercial Realty Trust, and Laurence J. Hoch and Charles E. Sharp.**

**Civ. A. No. 67-962-C.**

United States District Court
D. Massachusetts.

Jan. 5, 1968.

Julius H. Soble, Soble & Soble, Boston, Mass., for plaintiff.

Irving Marmer, Boston, Mass., for George H. Green.

Paul F. Markham, U. S. Atty., O. S. Sughrue, Jr., Asst. U. S. Atty., for Laurence J. Hoch and Charles E. Sharp.

## OPINION

CAFFREY, District Judge.

This is a civil action commenced in Suffolk Superior Court by Automotive Tire Service, Inc., a Massachusetts corporation with a usual place of business in Boston, against Captain Charles E. Sharp, Chief of Staff of the First Coast Guard District, stationed in Boston, against Commander Laurence J. Hoch, Legal Officer, United States Coast Guard, also stationed in Boston, and against George H. Green, Trustee of Commercial Realty Trust under a declaration of trust dated May 12, 1960, duly recorded in Suffolk County Registry of Deeds. The action was removed to this court by respondents Sharp and Hoch pursuant to the provisions of 28 U.S.C.A. § 1442 (a).

Briefly summarized, petitioner's complaint is to the effect (1) that it is the

1

lessee of a building located at 453 Commercial Street, Boston, under a handwritten paper claimed to be a lease for two years commencing November 1, 1967; (2) that the lessor and then owner of record of the building was the Commercial Realty Trust, which executed the lease on October 10, 1967, acting through George H. Green, Trustee; (3) that Green conveyed the fee in the real estate to the United States for use by the United States Coast Guard by a deed executed October 23, 1967 and recorded in Suffolk County Registry of Deeds on October 24, 1967; (4) that respondents Sharp and Hoch have caused the serving of a notice on petitioner to quit the premises on January 1, 1968; (5) that respondents Sharp and Hoch refuse to recognize the lease as valid and in so doing are interfering with the petitioner's right to quiet possession and enjoyment of the premises at 453 Commercial Street in such a way that their conduct amounts to an unconstitutional taking of petitioner's property without due process of law; and (6) that respondents Sharp and Hoch are acting unlawfully, arbitrarily, capriciously, unconstitutionally, and in excess of their authority as Coast Guard officers.

After the removal respondents Sharp and Hoch filed a motion to dismiss, in which they claimed that at all material times they were acting solely under the color of their office as officers of the United States Coast Guard and in the performance of their duties as such, within the scope of their employment and in behalf of the United States of America. Consequently respondents urge that this action in essence is one against the United States which will not lie, since sovereign immunity has not been waived by statute or otherwise. The respondents further contend that because the United States has not and cannot properly be joined as a party under Rule 19, Federal Rules of Civil Procedure, complete relief cannot be accorded herein and the action is fatally defective because of this non-joinder of an essential party which is the real party in interest.

A hearing was held, at which the parties were directed to present their evidence concerning the validity of the alleged lease, since resolution of the issue of the validity of this lease is basic to a determination of the various rights claimed and might obviate the necessity of passing on a multitude of other contentions raised herein.

After hearing I find and rule that during the summer and early fall of 1967, Green and representatives of the Coast Guard were negotiating for the purchase of the building located at 453 Commercial Street (consisting of seven floors and a basement) by the United States for use by the Coast Guard. These negotiations were as a result of a study made during the period 1965 through 1967 by a Coast Guard committee which concluded that proper development of the existing Coast Guard Base in Boston made it advisable to acquire by purchase three buildings adjacent to the Base, one of which was the building in question. Pursuant to the recommendation of this Committee, the United States obtained from Green an option to purchase the building exercisable on or before September 9, 1967, and the United States gave its check in the amount of $10,000 to Green at the time it obtained the option in June of 1966. George K. Feinberg, referred to frequently in the testimony as "Duddy," is Chairman of the Board, Chief Executive Officer, and the dominant force in Automotive Tire Service, Inc., which in fact did business as "Duddy's." I find that Feinberg is a highly sophisticated and experienced business executive who has been extremely successful in the tire business and who has had wide experience in the real estate field. He testified that his family has owned large parcels of real estate, that he himself has owned real estate, and that he is knowledgeable in the area of negotiating real estate leases on commercial property. He was referred to in the testimony as a shrewd businessman and, in fact, was character-

ized by his Sales Supervisor, Harry Gaines, who testified at the hearing, as "pretty shrewd," "the best in the tire business," "the most knowledgeable," and, finally, "the greatest." Suffice it to say that while Gaines' exuberant testimony probably should be discounted to some extent, a finding that Feinberg is no novice in the area of commercial dealings is well warranted.

At the time, or shortly after the decision was made by the Coast Guard to enter into negotiations to acquire an option on the building at 453 Commercial Street, this matter was brought to the attention of Feinberg, whose office was adjacent to that of Green, the trustee of the building. It is clear that there was a steady and constant intercommunication between Green, Feinberg, and other officers and employees of petitioner. Green testified without contradiction that he visited Feinberg's office at least four times daily, for coffee, cigarettes, and free use of a "WATS" telephone, which enabled Green to make free calls to distant parts of the United States. Green testified that he personally informed Feinberg, Sydney Brown, President of petitioner, and several office employees of petitioner, as well as his own employees, of the execution of the option and the payment of $10,000 earnest money by the Coast Guard in June of 1966. I find that from that date until papers were passed transferring title from the Trust to the United States, Feinberg stayed in close touch with the status of the option and the Coast Guard's intentions with reference thereto. I find that on a large number of occasions Feinberg asked Green for a new lease to replace the lease (which consisted of six typewritten pages) then in existence between the parties, which expired by its terms on October 31, 1967. Feinberg coupled his many requests for the execution of a new lease with an insistent statement to the effect that the Coast Guard would not in fact execute the option. He insisted to Green on many occasions that he was positive, and that he knew on

the highest authority, that the Coast Guard would not be successful in obtaining an appropriation from Congress for the purpose of purchasing this building. I further find that at all material times Feinberg realized that if the building was sold to the Coast Guard, possession of the building by the Coast Guard for storage and warehouse purposes would follow, making it necessary for petitioner to engage in the highly expensive task of removing all of its warehoused goods to a new location which new location Feinberg had done some searching for without success.

The United States notified Green in writing on August 11, 1967, that it would exercise the option, and Harold White, attorney for Green, notified Feinberg that same day that the United States had decided to exercise the option, that papers would be passed to effect transfer to the United States, but that he did not know the exact date for the passing of papers. Feinberg nevertheless went to White's office on September 1, 1967, and unsuccessfully attempted to obtain from White a copy of the option to purchase which Green had given to the United States. I find it significant, and consistent with Green's testimony that his stated position to Feinberg was that he would give him a new lease only if the Government deal aborted, that Feinberg sought to obtain this copy of the option for the purpose, as stated by him to White, of sending it to a lawyer-nephew of his located in Washington, D. C., so that the lawyer-nephew could take action hopefully calculated to frustrate the exercise of this option on behalf of the Coast Guard.

On October 10, 1967, Feinberg called Green into his office and asked Green for a lease. Green informed him that he could not execute a lease with him because of the pending sale of the building to the Coast Guard. Feinberg observed "the time is running short" (his lease was scheduled to expire in 21 days), and then asked Green if he would be willing to give a lease to Automotive Tire if the Government did not take the building.

**4**

Green said "Yes." Feinberg said he wanted more space and Green said that he would rent the entire building to Automotive Tire if the Government did not take it. Thereupon Feinberg set out on a piece of yellow legal-size paper the terms which he wanted embodied in the lease if one was executed in the event the Government sale fell through. Green signed it at the request of Feinberg and Feinberg caused it to be witnessed by his secretary, Rae Cowan, and signed by Sydney Brown and himself. This memorandum is in evidence as Plaintiff's Exhibit 1, and I find and rule that this document is not a lease, was not intended as a lease by either party, but was intended as, and in fact is, merely a memorandum embodying the terms which the parties agreed would be incorporated in a lease to be drawn at some future date by counsel for Green in the unlikely event that the Government failed to exercise its option to purchase the building.

I find it significant on the question of whether or not the parties intended Exhibit 1 to be a lease that the witness White, who discussed this document with Feinberg, testified that Feinberg in their discussions never called it a lease. I further find it significant that Feinberg agreed to pay a $1,000 retainer and an additional sum of $2,000 to White (who was Green's lawyer) for the later preparation of a lease based on the information contained in Exhibit 1. I find it inconceivable that Feinberg would agree to pay the sum of $3,000 to the other party's lawyer for merely typing up a copy of an already executed lease. White, whom I believe to be a trustworthy witness, testified that he received instructions by telephone from Feinberg for incorporation of certain changes in the terms in the lease to be subsequently executed which varied substantially from some of the notations contained in Exhibit 1—specifically, that instead of including a term of two years with a two year option to renew, as noted in Exhibit 1, Feinberg told White to draw a lease providing for a one year lease with a one year option to renew, followed by a two year option to renew.

I do not accept Feinberg's testimony that he believed Exhibit 1 was a lease. Rather, I find that Exhibit 1 was intended by the parties only as a memorandum of the information to be incorporated in a lease when a lease was prepared by an attorney to be executed later by the parties if it was finally determined that the United States abandoned its plan to acquire this real estate. I further find that a lease was never prepared by an attorney and also that no lease was ever executed, and that both Feinberg and Green knew that Exhibit 1 was not a lease.

It is not without significance that in addition to the changes referred to above called to White's attention by Feinberg, additional changes in the lease were suggested to White in a letter dated October 20, 1967, from Mr. Soble, attorney for Feinberg.

The hearing of this matter presented a sharp issue of credibility with respect to the intent of the parties toward and the circumstances relevant to the execution of Exhibit 1. I find that Green, White, and Commander Hoch were the credible witnesses among those who testified. I believe Green's testimony to the effect that Feinberg was so anxious to prevent the eviction of his corporation from this building that he improperly but unsuccessfully sought to induce Green to give a false statement as to their having executed a lease back in 1966. I believe Green's testimony that such a proposition was extended to him and that he refused to become a party thereto even though Feinberg told him there would be money in it for him to do so.

On all the evidence I find that Exhibit 1 was never intended to be a lease, and on all the evidence I rule that Plaintiff's Exhibit 1 is not and never was a valid and subsisting lease between Automotive Tire Service, Inc. and Green, Trustee of the Commercial Realty Trust. Because all of petitioner's claims for relief against the three respondents turn

on the claimed validity of Exhibit 1 as a lease, and because that issue is hereby resolved adversely to petitioner, all other claims for relief by petitioner fall with the contention that Exhibit 1 is a legally valid lease. Accordingly, the complaint is dismissed, and I do not reach the issues raised by respondents' motion to dismiss. Judgment for the respondents with costs.